IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

NATOSHA GILL                                              PLAINTIFF

V.                          CASE NO.  5:06CV00154 BD

MICHAEL J. ASTRUE,
Commissioner,
Social Security Administration[1]                         DEFENDANT

ORDER

Plaintiff Natosha Gill has appealed the final decision of the Commissioner of the

Social Security Administration (the "Commissioner") denying her a period of disability

and disability insurance benefits under Title II, and denying her claim for Supplemental

Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act").

For reasons that follow, the decision of the Administrative Law Judge ("ALJ")[2] is

affirmed.

I.      Procedural History:

Plaintiff protectively filed an application for disability and disability insurance

benefits and SSI benefits on May 14, 2003, alleging that she became disabled on the date

of filing, May 14, 2003 (Tr. 55-65), as a result of scoliosis, depression, mood disorder,

anxiety disorder, and panic disorder.  (Tr. 154, 198, 221, 226, 249)  The ALJ held a

_____

[1]  Michael J. Astrue was sworn in as the Commissioner of Social Security on
February 12, 2007.  He is therefore substituted for Jo Anne B. Barnhart under
Fed.R.Civ.P. 25(d)(1).

[2]  The Honorable David J. Manley, Administrative Law Judge.

hearing on June 17, 2005, and the Plaintiff appeared with her attorney, Mark Chadick.

The ALJ received testimony from Plaintiff and her mother, Terry Gill.  Charles Turner, a

vocational expert ("VE"), also provided testimony.  At the time of the hearing, Plaintiff

was a 23-year-old female with four young children.  She had a high school education and

little work experience.  Plaintiff attended beauty school and had received certified nurse

aide training.  On December 30, 2005, the ALJ issued a decision denying Plaintiff

benefits.  (Tr. 15-21)  Plaintiff filed the current Complaint for Review of Decision

(docket entry #2) on June 21, 2006.

## II.   <u>Findings of the ALJ</u>:

The ALJ followed the required five-step sequential analysis set out in the social

security regulations, 20 C.F.R. §§ 404.1520 and 416.920, finding: (1) that Plaintiff had

not engaged in substantial gainful activity since the onset of her alleged disability; (2) that

she suffered from a "severe impairment," as that term is interpreted for purposes of the

Social Security Regulations; (3) that Plaintiff did not have an impairment, or combination

of impairments, that rose to the level of severity for any impairment listed in Appendix 1

to Subpart P, Regulation No. 4; (4) that she had no past relevant work; but (5) that

Plaintiff retained the residual functional capacity ("RFC") to perform medium work,[3]

---

[3] "Medium work" is defined as work involving the "lifting no more than 50 pounds
at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20
C.F.R. § 404.1567(c).

where interpersonal contact is incidental to work performed.  He further found that a

significant number of jobs exist in the economy which Plaintiff is capable of performing.

Plaintiff contends that the findings of the ALJ are not supported by substantial

evidence and contain errors of law based on the following: (1) the ALJ erred by giving

minimal weight to the opinion of Dr. David Sizemore, Plaintiff's treating physician,

contrary to 20 C.F.R. § 404.1527; (2) the ALJ erred by giving limited weight to the

opinions of Dr. Nancy Toombs, the state agency medical consultant; (3) the ALJ erred by

failing to comply with Social Security Ruling 96-7p when he discredited Plaintiff for her

failure to obtain treatment; and (4) the ALJ erred by concluding, without supporting

medical opinion, that Plaintiff's marijuana and alcohol use was partly responsible for

Plaintiff's lack of concentration.

The Defendant argues that the ALJ's decision is supported by substantial evidence

because: (1) the ALJ properly evaluated the opinion of Plaintiff's doctors; and (2) the

ALJ properly evaluated Plaintiff's credibility.

## III.   <u>Legal Analysis:</u>

In reviewing the ALJ's decision, this Court must determine whether there is

substantial evidence in the administrative record to support the Commissioner's decision.

42 U.S.C. § 405(g).  This review function is limited, and the decision of the ALJ must be

affirmed "if the record contains substantial evidence to support it."  *Edwards v. Barnhart,*

314 F.3d 964, 966 (8th Cir. 2003).  "Substantial evidence is less than a preponderance but

enough so that a reasonable mind could find it adequate to support the decision." *Id.*

Evidence that both supports and detracts from the ALJ's decision must be considered, but

the decision cannot be reversed "merely because there exists substantial evidence

supporting a different outcome." *Id.*  "Rather, if, after reviewing the record, . . . it is

possible to draw two inconsistent positions from the evidence and one of those positions

represents the [ALJ's] findings, we must affirm the decision of the [ALJ]." *Young v.*

*Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000) (citations and quotations omitted).

Thus, the Court's function on review is to determine whether the Commissioner's

decision is supported by substantial evidence on the record as a whole and whether it is

based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42

U.S.C. § 405(g).

## A.    Assessment of Physician Opinions:

Plaintiff states that the ALJ erred by giving the opinions of Dr. Sizemore,[4] who

Plaintiff claims was her treating physician, minimal weight contrary to 20 C.F.R. §

404.1527.  It should be noted that the parties dispute whether Dr. Sizemore qualifies as a

"treating physician."  A treating physician is one who has an "ongoing treatment

relationship" with the plaintiff.  20 C.F.R. § 416.902.  An ongoing treatment relationship

is established by a plaintiff seeing the physician with a "frequency consistent with

---

[4] The ALJ does not mention Dr. Sizemore by name and only refers to a Psychiatric
Review Technique form which was unsigned, undated, and completed at the request of
Plaintiff's attorney several weeks after the hearing in this matter.  (Tr. 18, 283-292)

4

accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." *Id.*

It appears from the record that Dr. A. Alberto Sanchez was Plaintiff's treating physician until shortly before the hearing in this matter.  Approximately one month before the hearing, Plaintiff and Dr. Sanchez had a dispute over Plaintiff's condition, and Plaintiff requested a change of doctors.  (Tr. 234)  Plaintiff then began seeing Dr. Sizemore.  (Tr. 234)  It would be difficult to conclude that Plaintiff saw Dr. Sizemore with the same frequency with which she saw Dr. Sanchez.  This is because "frequency" is the rate at which an action occurs over a period of time.  As noted, Plaintiff began seeing Dr. Sizemore only a short time before the hearing.  After seeing Plaintiff for one or two months, Dr. Sizemore would not have had the "longitudinal picture of [Plaintiff's] impairment(s)" that helps establish a physician as a "treating source."  20 C.F.R. § 404.1527.  Regardless of whether either, both, or neither doctor is deemed Plaintiff's "treating physician," the ALJ gave Dr. Sizemore's opinions proper consideration.

Plaintiff believes the ALJ should have given the opinions of Dr. Sizemore, as Plaintiff's treating physician, controlling weight.  20 C.F.R. § 404.1527(d)(2).  If the ALJ finds "that a treating source's opinion on the issue(s) of the nature and severity of [the applicant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the applicant's] record, [the ALJ] will give it controlling weight." *Id.*  When

the opinion of a treating source is given less than controlling weight, it is proper to consider 1) the length of the treatment relationship and frequency of examination, 2) the nature and extent of the treatment relationship, 3) the extent of relevant evidence supporting and explaining the opinion, 4) the consistency of the opinion with the record as a whole, 5) whether the treating source is a specialist, and 6) other factors which support or contradict the opinion.  20 C.F.R. §§  404.1527(d) and 416.927(d).

At issue is the Psychiatric Technique Review ("PTR"), a report purportedly completed by Dr. Sizemore, that listed marked restrictions and frequent decompensation. (Tr. 283-293)  As noted by the ALJ, however, the PTR was undated, unsigned, and gave no basis for the opinions it contained.  (Tr. 18)  Thus, the PTR was not "well-supported" as required when giving such an opinion controlling weight.  Moreover, Plaintiff cannot say the PRT was consistent with the other substantial evidence.  The PRT noted marked restriction of Plaintiff's daily activities and social functioning.  Yet On June 24, 2005, one week after the hearing, Dr. Sizemore reported that Plaintiff was not depressed and was happy most of the time, was sleeping well when taking her medicine, but not otherwise; she was bored and lying around when at home, but was energetic and wanted to do things when at Day Treatment, was excited about finishing her quilt, and showed no side effects from her medicine.  (Tr. 293)

At the hearing, Plaintiff testified that her medicine was working well and she had not had any side effects.  (Tr. 328)  Plaintiff also testified that she acted as a hairdresser

for friends and family.  (Tr. 322)  Plaintiff's testimony and Dr. Sizemore's own

observations do not support the findings in Dr. Sizemore's PRT.  In addition, the PRT

presumably completed by Dr. Sizemore is inconsistent with the PRT provided by Dr.

Williams which found only mild to moderate limitations.  (Tr. 198-214)  The PRT

provided by Dr. Sizemore also is inconsistent with many of the observations made by Dr.

Sanchez, who had a much longer treating relationship with Plaintiff than did Dr.

Sizemore.  Dr. Sanchez treated Plaintiff until a month before the hearing when Plaintiff

and Dr. Sanchez had a dispute.  Part of the dispute, according to Plaintiff's testimony,

was that Dr. Sanchez told Plaintiff that she should not get disability benefits.  (Tr. 342)

Dr. Sanchez also told Plaintiff that she should "get out and work like everybody else."

(Tr. 343)  "It is well established that an ALJ may grant less weight to a treating

physician's opinion when that opinion conflicts with other substantial medical evidence

contained within the record."  *Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir.2000).

"Moreover, an ALJ may credit other medical evaluations over that of the treating

physician when such other assessments are supported by better or more thorough medical

evidence."  *Id*. at 14 (internal quotations and citations omitted).  Even assuming Dr.

Sizemore was Plaintiff's treating physician, the Court cannot conclude that the ALJ erred

by giving Dr. Sizemore's PRT less than controlling weight.

Plaintiff also alleges that the ALJ erred by giving limited weight to the state agency medical consultant, Dr. Nancy Toombs.[5]  Dr. Toombs did not observe that Plaintiff had any difficulties in concentration, persistence, or pace.  (Tr. 164)  Dr. Toombs did report limitations in adaptive functioning and very poor social skills.  She stated the Plaintiff was immature, impulsive, and had a propensity toward violence.  (Tr. 165)  Dr. Toombs reported Plaintiff had poor coping abilities and did not grasp how she perpetuated many of her own problems.  (Tr. 165)  Instead, Plaintiff saw others as the reason for her problems.  (Tr. 165)  According to Dr. Toombs, Plaintiff believed that most problems were best solved through fighting, and Dr. Toombs opined that Plaintiff had extremely poor judgment.  (Tr. 165)  Dr. Toombs concluded that Plaintiff needed some type of very structured job training where she could learn job skills and have a mentor help her through problem areas.  (Tr. 165)  At the time of the evaluation by Dr. Toombs, Plaintiff was not on any medication for her conditions.  (Tr. 162)  While Dr. Toombs' evaluation did show that Plaintiff had some limitations, it does not support Plaintiff's contention that the ALJ erred when assessing the various medical sources.

"It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians.  The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record

---

[5]It appears that the reference to limited weight actually refers to a report by Dr. Williams, not Dr. Toombs.  (Tr. 18)  Regardless, the report produced by Dr. Toombs supports the ALJ's decision.  (Tr. 161-165)

as a whole." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir.2001) (internal citations omitted).  The ALJ did not reject the opinions referenced by Plaintiff, but instead, weighed the opinions as required by 20 C.F.R. § 404.1527.  After review of the substantial medical record available in this case and the ALJ's decision, the Court cannot find error in the ALJ's assessment of the various medical opinions.

**B.**     **Assessment of Plaintiff's Testimony and Substance Abuse**:

Plaintiff contends that the ALJ erred by failing to comply with Social Security Ruling 96-7p when he discredited Plaintiff for her failure to obtain treatment and her use of marijuana and alcohol.  Plaintiff claimed to have frequent anxiety in public and reported that people made her nervous.  (Tr. 17)  Social Security Ruling 96-7p requires a two-step process when evaluating symptoms such as nervousness.  S.S.R. 96-7p.  First, the adjudicator must consider whether there is an underlying medically determinable impairment.  Second, the adjudicator must evaluate the effect of the symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  S.S.R. 96-7p.  When making this evaluation, the adjudicator must consider the entire objective medical record.  In addition, the adjudicator must consider the plaintiff's daily activities; location, duration, frequency, and intensity of the symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication; any additional treatment; any measures taken by Plaintiff to relieve

symptoms other than treatment; and, any other factors concerning the individual's

functional limitations and restrictions due to the symptoms.  S.S.R. 96-7p at *3.

At the first step, the ALJ concluded that Plaintiff had depression and various

anxiety disorders.  (Tr. 16)  The ALJ then stated that Plaintiff's "main problem is that she

has been prescribed medication but stops taking it every time she is pregnant.  She has 4

children, all under the age of 5, and thus, has been pregnant most of the time since 2000.

Thus, the claimant has spent little time on medication."  (Tr. 16)  Plaintiff takes exception

to this finding because the ALJ commended Plaintiff when she testified that she did not

take her medication out of concern for her unborn babies.  (Tr. 325)

Failure to follow a prescribed course of remedial treatment without good cause is

grounds for denying an application for benefits.  *Roth v. Shalala*, 45 F.3d 279, 282 (8th

Cir. 1995); *Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989).  Concern regarding the

side effects of medication during pregnancy is certainly good cause.  However, "failure to

follow a recommended course of treatment also weighs against a claimant's credibility."

*Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).  Even though Plaintiff reported

little to no side effects when taking her medication and admitted that she smoked

marijuana in close proximity to, if not during, pregnancy, the ALJ did not question

Plaintiff's credibility based solely on her concerns about taking prescribed medication

during her pregnancy.  Instead, the ALJ noted that Plaintiff's symptoms arose when she

was not taking her medication, even when she was not pregnant. (Tr. 17)  This observation is supported by the objective medical record in this case.

The ALJ proceeded to evaluate Plaintiff's symptoms under Social Security Ruling 96-7p and *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984).  The ALJ noted that Plaintiff's reported daily activities were inconsistent with activities typically performed by someone who is too disabled to work. (Tr. 17)  Plaintiff was able to take care of her personal hygiene and perform a full range of domestic duties. (Tr. 55)  Plaintiff alleged frequent symptoms of anxiety in public; yet she reported that her symptoms had not diminished her ability to shop for clothes or groceries. (Tr. 55)  Plaintiff was able to drive and walk for exercise. (Tr. 55)  Plaintiff also stated that she was a "bootleg beautician," meaning she styled hair without a license. (Tr. 225, 322)  Plaintiff reported to her social worker, Joyce Walker, and testified at the hearing, that she was looking for work and putting out applications as late as four months before the hearing. (Tr. 242, 325)

At the time of the hearing, Plaintiff's mother was the primary care giver for at least two of Plaintiff's four children. (Tr. 323)  The ALJ noted that some of Plaintiff's symptoms had been precipitated by Plaintiff's having to take care of her four children when her mother was working. (Tr. 257, 327)  When Plaintiff did have to watch her four children, she did not take her medicine regularly. (Tr. 257)

Plaintiff stated that, in addition to taking care of her children, she had anxiety about how to pay her bills and get things for her children.  (Tr. 332)  Plaintiff stated that she did not have anxiety attacks on a regular basis, but she did have them every once in a while.  (Tr. 333)  Plaintiff testified that her medications were working well at the time of the hearing.  (Tr. 328)

The ALJ recognized Plaintiff's anxiety in public, but noted that Plaintiff was either not taking medication or using the medication in combination with alcohol and marijuana when she was not pregnant.  (Tr. 17)  The ALJ concluded that Plaintiff had only mild-to-moderate limitations when taking her medication or doing something she wanted to do. (Tr. 18)  Impairments that are controllable or amenable to treatment do not support a finding of disability.  *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997)

It is clear from the ALJ's decision that Plaintiff's failure to follow the recommended course of treatment was a major factor in determining Plaintiff to be less than fully credible.  It is also clear, however, that the ALJ considered the factors required by Social Security Ruling 96-7p in addition to Plaintiff's failure to take her medication consistently.  After reviewing the medical evidence, testimony, and additional information in the record, the Court finds that the ALJ's decision is supported by substantial evidence.

**C.    Residual Functional Capacity and Jobs in the Economy:**

The ALJ found that Plaintiff had the RFC to perform medium work where interpersonal contact was incidental to work performed and where the complexity of tasks was learned and performed by rote with few variables and little judgment required.  He also found that Plaintiff was limited to jobs where supervision required was simple, direct, and concrete.  (Tr. 20)  The Plaintiff does not take issue with these findings.  These findings are also supported by the medical record.  (Tr. 166-169, 188-197)

The ALJ found that Plaintiff had no past relevant work.  (Tr. 20)  Thus, the burden shifted to the Commissioner to show jobs in the economy that Plaintiff was capable of performing.  *Tucker v. Heckler*, 776 F.2d 793, 795 (8th Cir. 1985).  To meet this burden, the ALJ called the VE to testify.  The VE testified that an individual with the same limitations as the Plaintiff could work as a kitchen helper or in a janitorial or cleaning position.  (Tr.  353-354)  There are 45,000 jobs in the region and 450,000 jobs in the national economy as a kitchen helper.  (Tr. 353)  There are 250,000 jobs in the region and 2.5 million jobs in the national economy in a janitorial or cleaning position.  (Tr. 354)  The VE's testimony constitutes substantial evidence.  See, *e.g. Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001).  Considering the number of jobs presented, and the evidence in the record, the Commissioner has met his burden in this case.  See, *e.g. Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (holding that, in light of the overall

record, expert's testimony that claimant could perform 10,000 jobs in the national economy and 200 jobs in Iowa was sufficient for Commissioner to meet her burden).

## IV.    Conclusion:

There is substantial evidence in the record to support the Commissioner's denial of benefits to Plaintiff.  It is clear, as the ALJ pointed out, that Plaintiff suffers from several impairments which cause some limitations.  However, there is sufficient evidence in the record to support the ALJ's assessment that Plaintiff retains the capacity to perform the jobs identified by the VE.  Accordingly, Plaintiff's appeal is DENIED.  The Clerk is directed to close the case.

IT IS SO ORDERED this 18th day of September, 2007.

_____
U. S. MAGISTRATE JUDGE